**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Krylosova Zinaida,

Petitioner,

v.

Todd M Lyons, et al.,

Respondents.

No. CV-26-02866-PHX-RM (MTM)

**ORDER**

Petitioner Krylosova Zinaida challenges her immigration detention under 28 U.S.C. § 2241, arguing that her prolonged detention without a bond hearing violates due process. (Doc. 1.)  For the reasons that follow, the Court will grant the § 2241 Petition and order Respondents to provide Petitioner with a bond hearing.

## I.    Background

Petitioner is a native and citizen of Russia who was detained by the United States Border Patrol on November 18, 2024, after crossing into the United States from Mexico without being admitted or paroled.  (Doc. 1 at 2; Doc. 11 at 1.)  Petitioner has been continuously detained since that date.  (Doc. 1 at 2.)

Petitioner was initially processed for expedited removal under 8 U.S.C. § 1225(b)(1). (Doc. 11 at 1; Doc. 11-2.)  After an asylum officer made a positive finding of a credible fear of persecution or torture, Petitioner was served on December 13, 2024, with a Notice to Appear charging her with removability as an alien present without admission or parole and as an immigrant without valid entry documents.  (Doc. 1 at 2; Doc. 11 at 1-

2; Doc. 11-3; Doc. 11-4.)  Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture.  (Doc. 1 at 2.)  On July 17, 2025, an immigration judge denied Petitioner's applications and ordered her removed to Russia.  (Doc. 1 at 3; Doc. 11 at 2; Doc. 11-5.)  Petitioner appealed the ruling to the Board of Immigration Appeals ("BIA"), and her appeal remains pending.  (Doc. 1 at 3; Doc. 11 at 2.)

## II.     Discussion

Respondents argue that Petitioner's detention without a bond hearing is constitutional and statutorily mandated by 8 U.S.C. § 1225.  (Doc. 11 at 2-5.)  The Court agrees that Petitioner is subject to mandatory detention under § 1225.  However, the Court rejects Respondents' argument that Petitioner has no constitutional right to a bond hearing.

In evaluating Petitioner's due process claim, the Court asks "whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Coke*, 562 U.S. 216, 219 (2011).  "A liberty interest may arise from the Constitution itself[.]" *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  "Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Fifth Amendment's Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

In *Department of Homeland Security v. Thuraissigiam*, the United States Supreme Court held that applicants for admission have "only those rights *regarding admission* that Congress has provided by statute."  591 U.S. 103, 140 (2020) (emphasis added).  In *Thuraissigiam*, the respondent attempted to invoke the writ of habeas corpus "to obtain additional administrative review of his asylum claim and ultimately to obtain authorization to stay in this country." *Id.* at 107.  In contrast, here, Petitioner invokes the writ for its traditional purpose: "a means to secure *release* from unlawful detention." *Id.* (emphasis in original).  Petitioner does not seek review of the merits of her immigration proceedings or authorization to stay in this country.  She simply seeks a bond hearing or release from

detention that she contends has become unconstitutionally prolonged. Neither a bond hearing nor release equates to admission. *See Rincon v. Hyde*, 810 F. Supp. 3d 101, 107 (D. Mass. 2025) (noting that, if a petitioner were released following a bond hearing, the petitioner "will be subject to the same removal proceedings as before, with no new right to remain"). Because "Petitioner does not purport to invoke any 'rights regarding admission,'" *id.* at 110, *Thuraissigiam* does not preclude Petitioner from challenging the constitutionality of her detention. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2026 WL 521557, at *28–31 (D. Mass. Feb. 25, 2026); *Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1092-93 (S.D. Cal. Nov. 12, 2025); *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023).

Neither does *Jennings v. Rodriguez* foreclose habeas relief in this case. In *Jennings*, the Supreme Court found that "§§ 1225(b)(1) and (b)(2) "mandate detention of aliens throughout the completion of applicable proceedings[.]" 583 U.S. at 302. But the Court analyzed only the meaning of the statutory language and expressly declined to consider the constitutionality of such mandatory detention. *See id.* at 312; *see also Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 770-73 (S.D. Cal. Nov. 4, 2020); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1105-06 (W.D. Wash. June 12, 2019).

Having concluded that Petitioner possesses a liberty interest in freedom from detention, the Court must decide what process is due. Courts in this circuit and beyond have grappled over what test should be used to determine whether procedural due process requires relief for a noncitizen held pursuant to § 1225(b). *See Doe v. Andrews*, 1:25-cv-00333-JLT-HBK, at *15–17 (E.D. Cal. Mar. 23, 2026) (applying the 3-factor *Lopez* test); *see also Galkin v. Scott*, No. 2:26-cv-00530-TLF, 2026 U.S. Dist. LEXIS 46838, at *7 (W.D. Wash. Mar. 6, 2026) (applying the 6-part *Banda* test) (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019)); *Leonteva v. Noem*, No. 4:26-cv-00043-SEB-KMB, 2026 U.S. Dist. LEXIS 52217, at *22 (S.D. Ind. Mar. 13, 2026) (applying the same 6-factor test, but calling it the *Jamal A* test) (*citing Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)); *L.S. v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-3598-

LL-BJW, 2026 U.S. Dist. LEXIS 10299, at \*11–15 (S.D. Cal. Jan. 20, 2026) (applying the 3-part *Mathews v. Eldridge* test) (citing *Mathews*, 424 U.S. at 335).

Out of the abovementioned tests, the Court finds the *Banda* test the most appropriate to the situation in this matter. Under the *Banda* test, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda*, 385 F. Supp. 3d at 1118.

The Court finds the *Banda* test more suitable than the *Mathews*[1] and *Lopez*[2] tests. Beginning with *Mathews*, the Court concurs with other district courts that have found that "while the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." *Lopez*, 631 F. Supp. 3d at 879. Put differently, the *Mathews* test is apt where the question is whether an administrative procedure provided is "constitutionally sufficient," but "[i]t does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106–07.[3]

---

[1] Under the *Mathews* test, the Court considers:
> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

[2] Under the *Lopez* test, "the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez*, 631 F. Supp. 3d at 879.

[3] In any event, the outcome applying *Mathews* and *Banda* would be the same—*i.e.*, Petitioner would be entitled to an individual bond hearing. Applying the first *Mathews* element, the undersigned finds that Petitioner has a strong private interest in her liberty from prolonged civil detention. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("As to the first factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'") (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

Turning next to the *Lopez* test, the Court notes that this test "concern[s] due process challenge[s] to mandatory detention under § 1226(c), [and is], in essence, a truncated version of the factors enumerated in *Banda*[.]" *Andrews*, 1:25-cv-00333-JLT-HBK, at *14. Because the six-factor *Banda* test is more detailed than *Lopez* and is better suited for noncitizens held pursuant to § 1225(b), the Court accordingly elects to apply the *Banda* test.

### A.   Length of Detention

The first *Banda* factor is the length of detention, "which is the most important factor." *Banda*, 385 F. Supp. 3d at 1118. "It is important to bear in mind the context: The detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Id.* (quoting *Jamal A.*, 358 F. Supp. 3d at 859). Where a petitioner's current detention exceeds a six-month threshold the "detention[] become less and less reasonable." *Haidari v. Immigr. & Customs Enf't Field Off. Dir.*, No. 2:26-cv-00039-TL, 2026 U.S. Dist. LEXIS 56882, at *8 (W.D. Wash. Mar. 18, 2026) (quoting *L.B.O.M. v. Hermosillo*, No. 2:25-cv-02695-GJL, 2026 U.S. Dist. LEXIS 21291, at *8 (W.D. Wash. Feb. 2, 2026)).

Here, Petitioner has been detained for over eighteen months. This is well beyond the six-month threshold, and beyond the length of confinement other courts have found to be prolonged. *See, e.g.*, *Kadir v. Larose*, No. 25cv1045-LL-MMP, 2025 U.S. Dist. LEXIS

Turning to the second element, considering the prolonged nature of Petitioner's detention, the Court finds a large risk of erroneous deprivation in the absence of an individualized bond hearing. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (noting that the discretionary parole system envisioned under the Immigration and Naturalization Act is insufficient "to overcome the constitutional concerns raised by prolonged mandatory detention"). Hence, an individualized bond hearing would greatly mitigate the risk of a continued constitutional violation.

Finally, regarding the third *Mathews* factor, the government interest in detaining Petitioner without an individualized bond hearing is low. First, "[p]roviding petitioner with a bond hearing would not impede respondents' interest in effecting removal or protecting the public, as the purpose of the bond hearing is to determine whether petitioner is a danger or flight risk." *Jensen v. Garland*, No. 5:21-CV-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023). Second, the fiscal burden of providing an individualized bond hearing is low. *See Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome.").

203614, at *13 (S.D. Cal. Oct. 15, 2025) (noting that thirteen months without a bond hearing is prolonged); *cf. Banda*, 385 F. Supp. 3d at 1118 ("Petitioner has been in detention for approximately 17 months, which is a very long time."). In light of these decisions, and based upon the facts of the instant action, the Court finds the length of Petitioner's detention strongly favors granting relief.

### B.    Likely Duration of Future Detention

The second factor requires the Court to "consider[] how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (internal quotation marks omitted). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Akmal v. Warden of Cal. City Det.*, No. 1:25-CV-01921-DC-DMC-HC, 2026 WL 657606, at *7 (E.D. Cal. Mar. 9, 2026) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)).

While the length of future detention is uncertain considering Petitioner's pending appeal before the BIA, the Court finds that the likely duration of future detention is sufficiently lengthy for this factor to favor Petitioner. *See Kadir*, 2025 U.S. Dist. LEXIS 203614, at *8 ("Petitioner's future detention can last several more months or even years during the adjudication of Respondents' appeal to the BIA.").

### C.    Conditions of Detention

The third factor requires the Court to consider the conditions of Petitioner's confinement. *Banda*, 385 F. Supp. 3d at 1119. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (internal alteration marks omitted).

Here, the parties provide little information concerning Petitioner's conditions of confinement. However, Petitioner avers that she "suffers from ongoing medical and psychological conditions that are exacerbated by prolonged detention"; that she "has experienced panic attacks, anxiety, ongoing physical weakness," deteriorating eyesight,

and "constant stomachaches"; that her detention has "caused significant deterioration in her physical and mental health," and that continued detention places her "at heightened risk of serious and irreparable harm." (Doc. 1 at 4.)  Based on Petitioner's averment that her detention is causing a deterioration in her mental and physical condition, the Court finds that the third *Banda* factor weighs in favor of Petitioner.

### D.   Delays in Removal Proceedings

Next, the Court shall analyze the "fourth and fifth [*Banda*] factors—both [of] which consider delays caused by the parties—together." *Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025).

The fourth factor requires the Court to consider the nature and extent of any delays caused by Petitioner.  "Courts should be sensitive to the possibility that dilatory tactics by the removable noncitizen may serve not only to put off the final day of deportation, but also to compel a determination that the noncitizen must be released because of the length of his incarceration."  *Banda*, 385 F. Supp. 3d at 1119 (internal quotation and alteration marks omitted).  Petitioner avers that she has consistently cooperated with all immigration authorities and proceedings (Doc. 1 at 3), and Respondents do not contend Plaintiff has caused any delays in this action.  Consequently, this factor is neutral.

The fifth factor considers the delays in removal caused by the government.  *Banda*, 385 F. Supp. 3d at 1120.  "[I]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable . . . Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials."  *Galkin*, 2026 U.S. Dist. LEXIS 46838, at *11 (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10–11 (S.D.N.Y. May 23, 2018)).  It is unclear whether immigration officials have caused delay in Petitioner's case or whether the BIA has delayed adjudication of Petitioner's appeal. Therefore, the fifth factor is also neutral.

### E.   Likelihood of Removal

The final *Banda* factor requires the Court to consider "the likelihood that the final

proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120. "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Sajous*, 2018 WL 2357266, at *11).

Here, the likelihood of Petitioner prevailing in her appeal before the BIA is unclear. Accordingly, the final *Banda* factor is neutral.

In sum, three of the *Banda* factors favor Petitioner, including one that strongly favors her, and three factors are neutral. The Court accordingly finds that Petitioner's prolonged detention under § 1225(b)(2) has become unreasonable.

**F.   Remedy**

Where a noncitizen's detention under § 1225(b)(2) has become unreasonable, the proper remedy is an individualized bond hearing before a neutral immigration judge. *See Galkin*, 2026 U.S. Dist. LEXIS 46838, at *12 (finding that "there is no authority" supporting relief in the form of immediate release, but there is authority supporting relief in the form of a bond hearing) (cleaned up); *see also Lopez*, 631 F. Supp. 3d at 882 ("The Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release."); *Kaur v. Lyons*, 2:26-cv-00217-KML, at *1 (D. Ariz. Apr. 9, 2026) (adopting the magistrate judge's recommendations for a 1225(b)(2) petitioner and granting a bond hearing). At the bond hearing, Respondents bear the burden of proving that Petitioner is a danger or flight risk by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011).

Accordingly,

**IT IS ORDERED** that the Petition (Doc. 1) is **granted** as to Petitioner's request for a bond hearing, and **denied** as to Petitioner's request for immediate release.

**IT IS FURTHER ORDERED** that Petitioner shall receive a bond hearing within **seven (7) days** of the date this Order is filed. The bond hearing shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). There must be

a contemporaneous record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community. In the alternative, the Government shall immediately release Petitioner under appropriate conditions of release.

**IT IS FURTHER ORDERED** that Respondents shall file a notice of compliance within **two (2) days** of Petitioner's bond hearing or release. The notice of compliance shall **state the result** of Petitioner's bond hearing, if applicable.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment in Petitioner's favor and close this case.

Dated this 3rd day of June, 2026.

_____
Honorable Rosemary Márquez
United States District Judge